IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID WILEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-930-RP |
| | § | |
| TEXAS STATE UNIVERSITY, VINCENT LUIZZI, KAREN MEANEY, ANN WATKINS, and CHARMAINE MAZZANTINI, | § § § § § | |
| | § | |
| Defendants. | § | |

## **ORDER**

Before the Court is a Motion to Dismiss filed on November 29, 2018, by Defendants Texas State University System ("TSUS"), Texas State University ("the University"), Vincent Luizzi ("Luizzi"), Karen Meaney ("Meany"), Ann Watkins ("Watkins"), and Charmaine Mazzantini ("Mazzatini") (collectively, "Defendants"). (Dkt. 30). Plaintiff David Wiley ("Wiley") filed a response, (Dkt. 33), and Defendants filed a reply, (Dkt. 34). Having considered the parties' submissions, the record, and the relevant law, the Court will grant Defendants' motion.

## **I. BACKGROUND**

Wiley is a tenured professor at Texas State University who is currently on administrative leave after four university employees alleged that he sexually harassed them over a period of years. (*See* 2d Am. Compl., Dkt. 14). Wiley asserts that the University's administrative procedures to investigate and resolve the allegations violate his due process rights under the Fourteenth Amendment to the United States Constitution and Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, et. seq. ("Title IX"). (*Id.* at 18–28). Wiley also asserts claims under Title IX

1

for selective enforcement, sexual harassment, and sex discrimination, and state law claims that individual defendants acted *ultra vires* and tortiously interfered with his contract with the University. (Not. Removal, Dkt. 1; 2d Am. Compl., Dkt. 14). Wiley's claims against the individual defendants are against them in their official capacities: Luizzi, as Interim Title IX Coordinator; Meaney, as Department Chair in the Health and Human Performance Department at Texas State University; Watkins, as head of the Due Process Hearing tribunal; and Mazzantini, as counsel for Texas State University. (2d Am. Compl., Dkt. 14, at 2–3). Wiley seeks monetary damages and injunctive and declaratory relief. (*Id.* at 1). Wiley bases these claims on the following allegations.

On March 27, 2018, the Dean of Texas State University advised Wiley that the Title IX office had concluded four investigations into sexual misconduct allegations against him. (Carpenter Letter, Dkt. 14-4, at 40; *see also* Reports on Allegations of Sexual Harassment, Dkt. 14-4, at 41–93). Dean Carpenter advised Wiley that the recommended sanction was termination. (*Id.*). Wiley alleges that the Title IX investigation findings were premature and based on "thinly-supported reports," and that the investigation was in fact a pretext to terminate Wiley in "retaliation for operational disagreements" with Department Chair Karen Meany. (2d Am. Compl., Dkt. 14, at 4). Wiley alleges that Meany, acting as Department Chair, has biased the Title IX investigation because she served as a witness in all four investigations, and helped to identify various witnesses to support the complainants' allegations during the Title IX investigation. (*Id.* at 16).

Because Wiley has tenure, he is entitled to a Faculty Due Process Hearing ("Due Process Hearing") to appeal the investigation findings and the recommended sanction. (Report on Allegations of Sexual Harassment, Dkt. 14-4, at 53). The Due Process Hearing "review[s] the investigation and the appropriateness of the Sanction for significant procedural errors or

omissions."[1] (*Id.*). On April 6, 2018, Wiley appealed, and the University appointed a tribunal for a Due Process Hearing. (2d Am. Compl, Dkt. 14, at 4).

Wiley alleges that the proceedings thus far have failed to meet constitutional due process standards. Specifically, he alleges that the University did not give him an opportunity "to submit comments regarding the allegations" before concluding the investigation and issuing a report. (*Id.* at 6). Wiley states that the University has withheld access to his email account and withheld documents relevant to his self-defense. (*Id.* at 5–6). Wiley states that since March 2018, he has repeatedly requested certain evidence but only received a portion of the materials he believes to be relevant. (*Id.* at 6). He also requested records through the Texas Public Information Act ("TPIA"), but these requests "yielded equally unsuccessful results."[2] (*Id.*). Wiley alleges that when he was first informed of the investigation findings and recommended sanction, he was not given a copy of the report. (*Id.*). He has since received a copy. (*Id.* at 5). Additionally, Wiley states that although the deadline to exchange evidentiary materials for the Due Process Hearing has passed, Mazzantini has not disclosed the questions she plans to ask witnesses. (*Id.*). He also contends that one individual who filed a complaint against him was an IT specialist and may have had access to his email account. (*Id.* at 7). He alleges that the University "continues to withhold relevant evidence" and engage in

---

[1] The Due Process Hearing tribunal then issues a recommendation to "approve, reject, modify, or remand the Finding and/or Sanction," which is forwarded to the University President. (Report on Allegations of Sexual Harassment, Dkt. 14-4, at 53). "When the President finds substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation or determines there is insufficient evidence to support the recommended Finding, he or she may remand the matter to the Title IX Coordinator for further investigation and/or other action, or may reject the recommended Finding(s) or Sanction(s)." (*Id.* at 53–54). The President ultimately issues a written, final decision. (*Id.* at 54).

[2] The Open Records Division of the Attorney General's Office issued a letter ruling to Texas State University on October 15, 2018, which advised the University that it must withhold certain material related to the investigations pursuant to common-law privacy law and the holding in *Morales v. Ellen*, 840 S.W.2d 519 (Tex. App.—El Paso 1992, writ denied). (Letter Ruling of Oct. 15, 2018, Dkt. 14-3, at 43). The letter ruling advised that the University must release all other materials under request, other than materials subject to privilege or copyright, and only with appropriate redactions under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g(a)(1)(A). (*Id.* at 39, 43).

3

"dilatory tactics." (*Id.* at 9). He submits that he cannot adequately prepare for the Due Process Hearing. (*Id.*).

As of the date of this order, the Due Process Hearing has not taken place. The hearing was initially set for September 7, 2018. (*Id.* at 6). The parties agreed to reset the hearing for October 17, 2018. (*Id.*). Before the hearing took place, on October 10, 2018, Wiley filed this action in the 274th Judicial District Court of Hays County, Texas, as Cause No. 18-2329. (Not. Removal, Dkt. 1, at 2). The Hays County court entered a temporary restraining order ("TRO") enjoining the Due Process Hearing pending a hearing on Wiley's motion for preliminary injunction. (Hays County TRO, Dkt. 14-3, at 34–35).

Defendants removed to federal court on October 29, 2018. (Not. Removal, Dkt. 1, at 1). On November 15, 2018, Wiley filed a motion for a TRO and preliminary injunction, seeking to postpone the Due Process Hearing until this Court hears his motion for a preliminary injunction or the merits of his case. (Mot. TRO & Prelim. Inj., Dkt. 16). This Court declined to enter a TRO, finding no substantial risk of imminent, irreparable harm, and set a hearing on the motion for a preliminary injunction. (Order Denying TRO, Dkt. 23). On January 16, 2019, the Court held a hearing on the motion for a preliminary injunction, which remains pending.

On November 29, 2018, Defendants filed a motion to dismiss Wiley's claims under Federal Rule of Procedure 12(b)(1) and 12(b)(6), asserting that his claims are unripe and fail to state claims upon relief may be granted. (Mot. Dismiss, Dkt. 30). The Court now turns to that motion.

## II. LEGAL STANDARD

### A. Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

Under Rule 12(b)(1), a court may dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks "the statutory or constitutional power to adjudicate the case." *Home*

4

*Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). The court may "weigh the evidence and satisfy itself" that subject matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. Of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The court may dismiss a complaint for lack of jurisdiction based on: (1) the face of the complaint; (2) the complaint supplemented by undisputed facts from the record; and (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). The party asserting jurisdiction bears the burden of proof. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Dismissal of a plaintiff's case under 12(b)(1) is not a determination on the merits and does not prevent a plaintiff from pursuing a claim in a court that has proper jurisdiction. *Id.* A court should grant a 12(b)(1) motion to dismiss only if it appears certain that the plaintiff cannot prove any set of facts that would entitle him to recovery. *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017).

Ripeness is "a constitutional prerequisite to the exercise of jurisdiction." *Shields v. Norton*, 289 F. 3d 832, 835 (5th Cir. 2002); see also S*ommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Lower Colo. River Auth. v. Papalote Creek II, LLC*, 858 F.3d 916, 924 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 747 (2018) (quoting N*ew Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)). "To determine if a case is ripe for adjudication, a court must evaluate (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007) (cleaned up). "The fitness and hardship prongs must be balanced." *Id.* (citing *Am. Forest & Paper Ass'n v. EPA*, 137 F.3d 291, 296 (5th Cir. 1998)). Regarding fitness for adjudication, "[a] case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans*, 833 F.2d at 587 (citing *Thomas v. Union Carbide Agric. Prods.*

5

*Co.*, 473 U.S. 568, 581 (1985). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas*, 523 U.S. at 300 (quoting *Thomas*, 473 U.S. at 580–81). Regarding the hardship analysis, "[t]he Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being forced . . . to modify one's behavior in order to avoid future adverse consequences." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012).

### B. Failure to State a Claim Under Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely

6

on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Id.* "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

### A. Federal Claims

Defendants submit that Wiley's federal claims are not ripe. (*See* Mot. Dismiss, Dkt. 30, at 6–8, 16). This Court agrees.

#### 1. Due Process Claims

Wiley asserts procedural and substantive due process claims. Wiley contends that the University's administrative procedures to investigate and resolve the allegations against him violate Wiley's due process rights under the Fourteenth Amendment of the United States Constitution and Title IX. (2d Am. Compl., Dkt. 14, at 18–28).

A procedural due process claim "is not ripe until the process complained of has reached its completion." *Doe v. Univ. of Tex. at Austin*, No. 1:18-cv-85-RP, at *3 (W.D. Tex. May 15, 2018). "Because the remedy for a procedural due process claim is more process, it makes little sense to adjudicate such a claim before the process is complete." *Id.* at *4. Here, the parties agree: Because Wiley has tenure, he is entitled to a Faculty Due Process Hearing, but that hearing has not yet taken place.[3] Wiley seeks an injunction to prevent the Due Process Hearing from taking place before this Court can evaluate the University's procedures. (Mot. Prelim. Inj., Dkt. 16). Because the process

---

[3] (*See* Report on Allegations of Sexual Harassment, Dkt. 14-4, at 53).

7

Wiley seeks to challenge is not yet complete, the result of the University's administrative procedures is entirely speculative. The Due Process Hearing tribunal might "reject, modify, or remand" the investigation findings and recommended sanction. (Report on Allegations of Sexual Harassment, Dkt. 14-4, at 53). Afterwards, the University President might "find substantial doubt about the thoroughness, fairness, and/or impartiality of the investigation," "determine there is insufficient evidence to support the recommended Finding," "remand the matter to the Title IX Coordinator for further investigation and/or other action," or entirely "reject the recommended Finding(s) or Sanction(s)." (*Id.* at 53–54). For now, any violation of Wiley's procedural rights depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *See Texas*, 523 U.S. at 300. As a result, Wiley's procedural due process claims are not ripe.

Wiley's substantive due process claims are also not ripe. In a substantive due process or facial constitutional challenge, the same test applies: "[a] case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *Choice Inc.*, 691 F.3d at 715. Here, more factual development is undoubtedly required before any factfinder can evaluate Texas State University's policies and the ultimate disciplinary action taken against him—which may turn out to be no disciplinary action at all. Additionally, a court should dismiss "pre-enforcement" substantive due process challenges as unripe where a plaintiff "fail[s] to show that hardship will result from withholding court consideration at this time." *Choice Inc.*, 691 F.3d at 712. Wiley contends that continuing with the University Due Process Hearing places his reputation and future career opportunities at risk of irreparable harm. (2d Am. Compl, Dkt. 14, at 21). But those potential harms may be alleviated through the University's appeal processes. Wiley has not shown that hardship will result from withholding court consideration at this time.

2. Remaining Title IX Claims

Wiley also states claims under Title IX for erroneous outcome, selective enforcement, hostile environment based on sex discrimination, and deliberate indifference. (*Id.* at 26–31). The Court finds that these claims are not ripe for the same reasons as his due process claims. Further factual development of Wiley's Title IX claims is necessary because "contingent future events that may not occur as anticipated, or indeed may not occur at all" once he completes the University's administrative process. *See Texas*, 523 U.S. at 300. Wiley has not shown any reason to depart from the hardship analysis above. The Court will therefore dismiss Wiley's remaining Title IX claims as unripe.

Because Wiley's federal claims are not ripe, the Court will dismiss those claims under Rule 12(b)(1) for lack of subject matter jurisdiction.

**B. State Law Claims**

Wiley also brings claims under Texas law alleging (1) that Luizzi, Meany, Mazzantini, and the Tribunal itself acted *ultra vires* through the Title IX investigation and University proceedings thus far, and (2) that Meany tortiously interfered with Wiley's employment contract by causing complainants to file sexual harassment complaints against Wiley. (2d Am. Compl., Dkt. 14, at 9–18).

1. Jurisdiction Over State Law Claims

The Court's jurisdiction over Wiley's state law claims is supplemental to its federal question jurisdiction. 28 U.S.C. § 1367(a). Because the Court will dismiss Wiley's federal claims with this Order, the Court has discretion whether to retain jurisdiction over any remaining state law claims. "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009); *see also* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims

over which it has original jurisdiction."); *Osborn v. Haley*, 549 U.S. 225, 245 (2007) ("Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction.").

Because Wiley's state law claims and his federal claims arise from common facts, the Court will exercise its discretionary supplemental jurisdiction over the remaining state law claims.

2. Ripeness of State Law Claims

A federal court exercising supplemental jurisdiction over state law claims must apply the substantive law of the state in which it sits. *Sommers Drug Stores Co. Empl. Profit Sharing Tr.*, 883 F.2d 345, 353 (5th Cir. 1989) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 (1938)). As a result, this Court must apply Texas law to Wiley's state law claims. In resolving issues of Texas state law, federal courts look to decisions of the Texas Supreme Court. *Hux v. S. Methodist Univ.*, 819 F.3d 776, 780 (5th Cir. 2016). If that court has not ruled on the issue, the federal court must make what is known as an "Erie guess"—that is, it must predict what the Texas Supreme Court would do if faced with the facts currently before the federal court. *Id.* Generally, absent a decision by Supreme Court of Texas, state intermediate courts' decisions are the strongest indicator of what a state supreme court would do. *Id.* at 780–81.

Under Texas law, "[r]ipeness, like standing, is a threshold issue that implicates subject matter jurisdiction." *Patterson v. Planned Parenthood of Houston & Se. Texas, Inc.*, 971 S.W.2d 439, 442 (Tex. 1998) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)). "The doctrine has a pragmatic, prudential aspect that is directed toward conserving judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes." *Id.* (cleaned up). "At the time a lawsuit is filed, ripeness asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Id.* Ripeness under Texas law thus closely resembles the federal standard: "[a] case is not ripe when its resolution

depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Id.* at 443.

All of Wiley's state law claims are unripe because they rely on facts that are all but certain to develop further as the University continues its Title IX proceedings. The Court briefly outlines Wiley's state law claims. First, to state an *ultra vires* claim, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Wiley alleges that Luizzi "acted outside of his authority by failing to apply the appropriate rules when investigating Title IX complaints against [Wiley]," and failing to update Title IX policies as appropriate. (2d Am. Compl., Dkt. 14, at 10–11). Wiley alleges that Meany acted ultra vires by identifying and "cultivating" witnesses "to support the complainants' allegations." (*Id.* at 12–13). Wiley contends that the Tribunal itself has "coopted" the University General Counsel's responsibilities in conducting the Title IX proceedings. (*Id.* at 15). Finally, Wiley asserts that Mazzantini, as General Counsel, "has acted and continues to act without the necessary authority" to participate in the Title IX proceedings because she effectively represents both the University and the four complainants. (*Id.* at 16).

Second, the elements of a tortious inference claim are: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)). Wiley alleges that Meany wrongfully interfered with Wiley's employment contract by causing complainants to file sexual harassment complaints against him. (2d Am. Compl., Dkt. 14, at 16–18).

Even if Wiley's allegations adequately stated his respective state law claims,[4] all of his claims rely on facts which may develop significantly over the course of the University's Due Process Hearing and full appeals process. The Court finds that the facts have not "developed sufficiently" to evaluate the alleged conduct of the individual defendants or any alleged injury to Wiley. *See Patterson*, 971 S.W.2d at 442 (citing *Mayhew*, 964 S.W.2d at 928). Accordingly, the Court will dismiss Wiley's state law claims as unripe.

## V. CONCLUSION

For the reasons given above, it is **ORDERED** that Defendants' Motion to Dismiss, (Dkt. 30), is **GRANTED**. Wiley's claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Wiley's Motion for a Preliminary Injunction, (Dkt. 16), is **DENIED AS MOOT**.

**SIGNED** on January 24, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[4] The Court does not decide at this time whether the pleadings adequately state *ultra vires* or tortious interference claims.